UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

------------------------------------------------------x
: 
In re: : Chapter 11
: 
TK HOLDINGS INC., et al., : Case Nos. 17-11375 (BLS)
: 
Debtors[1]. : Jointly Administered
: 
------------------------------------------------------x
AUTOMOTIVE COALITION FOR :
TRAFFIC SAFETY, INC., :
:
Plaintiff, :
:
v. : Adv. Proc. No. 17 - _____ (BLS)
:
TK HOLDINGS INC., :
:
Defendant. :
------------------------------------------------------x

## COMPLAINT

Plaintiff, Automotive Coalition for Traffic Safety, Inc. ("ACTS"), for its Complaint against TK Holdings, Inc. ("Takata"), alleges as follows:

### NATURE OF THE CASE

1. ACTS seeks a declaration that the following intellectual property is owned by ACTS and is not property of the estate of Takata: (a) U.S. Provisional Patent Application No. 61/451,082, filed on March 9, 2011 ("the '082 Application") (Ex. A); (b) U.S. Patent

---

[1] The Debtors in these chapter 11 cases along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Takata Americas (9766); TK Finance, LLC (2753); TK China, LLC (1312); TK Holdings Inc. (3416); Takata Protection Systems Inc. (3881); Interiors in Flight Inc. (4046); TK Mexico Inc. (8331); TK Mexico LLC (9029); TK Holdings de Mexico S. de R.L. de C.V. (N/A); Industrias Irvin de Mexico, S.A. de C.V. (N/A); Takata de Mexico, S.A. de C.V. (N/A); and Strosshe-Mex, S. de R.L. de C.V. (N/A). Except as otherwise set forth herein, the Debtors' international affiliates and subsidiaries are not debtors in these chapter 11 cases. The location of the Debtors' corporate headquarters is 2500 Takata Drive, Auburn Hills, Michigan 48326.

1

Application No. 13/415,767, filed March 8, 2012, which matured into U.S. Patent No. 8,479,864 (Ex. B); (c) U.S. Patent No. 8,479,864, which issued July 9, 2013 ("the '864 Patent") (Ex. C); (d) International (PCT) Patent Application No. PCT/US2012/028295, filed March 8, 2012 ("PCT '295") (Ex. D); (e) European Patent Application No. 12754647.1, filed March 8, 2012 ("EP '647") (Ex. E); (f) Japanese Patent No. JP6121916 (B2), filed March 8, 2012 and issued April 7, 2017 (Ex. F); (g) Chinese Patent Nos. CN103476623, filed March 8, 2012 and issued November 9, 2016 (Ex. G); and (h) any and all other U.S. or foreign patents or patent applications which claim benefit of the foregoing patents and/or patent applications (collectively, "Patent Assets").

2. The Patent Assets are the result of a collaboration between ACTS, Takata, and TruTouch Technologies, Inc. ("TruTouch") to develop touch-based technologies to prevent drunk driving. The collaboration, which started on or before February 9, 2011, was formalized in an agreement dated September 1, 2011 ("Initial Agreement"), which was later amended and restated on March 31, 2014 (the "Agreement"). *See* Ex. H.

3. Pursuant to the Agreement, ACTS owns all worldwide rights, title and interest in and to all "Work Product" developed under the Agreement. Under the Agreement, "Work Product" is defined as ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ *See id.*, Section 13(a)(i) (emphasis added).

4.     The Parties intentionally referenced the date of February 9, 2011 in the definition of "Work Product" because the Parties began their collaborative work to develop the touch-based technologies prior to execution of the Initial Agreement. The Parties continued to negotiate certain legal terms and conditions, and formalized their relationship in writing via the Initial Agreement on September 1, 2011.

5.     All of the Patent Assets are "Work Product" under the Agreement as all were developed, discovered, invented, authored, or first used or reduced to practice after February 9, 2011 and were developed, discovered, invented, authored, or first used or reduced to practice in the course of performing services or otherwise for on behalf of ACTS.

6.     The Agreement further provides that Takata and/or TruTouch may license ACTS certain intellectual property that was developed, discovered, invented, authored, or first used or reduced to practice before February 9, 2011, defined in the Agreement as "Background IP." *See id.*, Section 13(b). The Agreement provides that such Background IP is not owned by ACTS. Upon entering into the Agreement, Takata and TruTouch disclosed their Background IP in Schedule C to the Agreement. None of the Patent Assets are listed in Schedule C and none of the inventions disclosed in the Patent Assets are listed in Schedule C. *See id.*, Schedule C to the Agreement.

7.     ACTS brings this action to clarify the substantial, immediate, and real controversy between the parties regarding the ownership of the Patent Assets. In its Schedule of Assets filed with this Court, Takata has listed at least: (a) the '864 Patent; (b) EP '647; (c) Japanese Patent No. JP6121916 (B2); and (d) Chinese Patent Nos. CN103476623 as assets owned by Takata. *See* Dkt. 476 at 11, 13, and 16. Without declaratory relief, the substantial, immediate, and real controversy between the parties poses a substantial risk of injury to ACTS. The pending sale of

3

Takata assets to a third party, if it includes the Patent Assets, would substantially harm ACTS because ACTS is the true owner of the Patent Assets.

## THE PARTIES

8. Plaintiff ACTS is a Virginia nonstock corporation, with its principal place of business located at 803 7th Street, N.W., 3rd Floor, Washington, DC 20001-3717.

9. On information and belief, Takata is a Delaware corporation, with its principal place of business located at 2500 Takata Drive, Auburn Hills, MI 48326.

## JURISDICTION AND VENUE

10. This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157, 1334, 2201, 2202, This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

11. Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

12. This adversary proceeding is commenced pursuant to Bankruptcy Rule 7001(2) and (9) and section 541 of the Bankruptcy Code. Declaratory relief is appropriate pursuant to Bankruptcy Rule 7001 and 28 U.S.C. § 2201.

STATEMENT PURSUANT TO LOCAL RULE 7008-1

Pursuant to Rule 7008-1 of the Local Rules of Bankruptcy Procedure of the United States Bankruptcy Court for the District of Delaware, ACTS consents to entry of final orders and judgments by the Court if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

**STATEMENT OF FACTS**

**A. The Agreements**

13.     ACTS is a nonprofit corporation, formed for the purpose of encouraging, promoting and increasing highway motor vehicle traffic safety and educating the public about motor vehicle traffic safety issues, that, among other things, is seeking to develop non-invasive, in-vehicle alcohol detection technologies that are less intrusive than ignition interlocks with the hope of greater public acceptance of installation in vehicles.

14.     On February 8, 2008, ACTS entered into a jointly funded Cooperative Agreement with the National Highway Traffic Safety Administration (the "NHTSA") to explore the feasibility, the potential benefits of, and the public policy challenges associated with a more widespread use of non–invasive technology to prevent alcohol–impaired driving, which is one of the primary causes of motor vehicle fatalities on U.S. roads.  In September 2013, ACTS and the NHTSA entered into a follow-on jointly funded Cooperative Agreement to continue their work.

15.     On September 1, 2011, ACTS, Takata and TruTouch signed the Initial Agreement for the development of touch-based technologies to prevent drunk driving, in furtherance of the research funded under the Cooperative Agreement between ACTS and the NHTSA. Specifically, ACTS was working with Takata and TruTouch to develop a system to detect the alcohol level in a driver or other operator only (an "Alcohol Detection System").

16.     Pursuant to Section 13(a)(i) of the Agreement, ACTS owns all worldwide rights, title and interest in and to all Work Product (including all Intellectual Property Rights therein) developed under the Agreement.  Such Work Product is considered works made for hire (as that term is used in Section 101 of the United States Copyright Act, 17 U.S.C. §101, or in analogous provisions of other applicable laws) owned by ACTS.  During the Term of the Agreement and

thereafter, Takata and TruTouch agreed to fully cooperate with ACTS, including executing documents and taking such other lawful actions as ACTS may request, at ACTS' reasonable expense, to evidence and perfect such assignment and to secure ACTS' perpetual and worldwide ownership of all Intellectual Property Rights in such Work Product.

17. On March 10, 2011, one month after the February 9, 2011 date in the Agreement after which all inventions and technology developed, discovered, invented, authored, or first used or reduced to practice by Takata in connection with the Agreement in the course of performing Services for or on behalf of ACTS are owned by ACTS, Takata provided a Supplement to PII Proposal: Touch-based, NIR DADSS to ACTS. *See* Ex. I (PowerPoint). As part of the presentation, Takata introduced its team members, including David Cox, Benjamin Ver Steeg, Todd Watson, Trent Ridder, and Craig White. *See id*. at 3.

18. Also in this presentation, Takata disclosed its ███████████████████ ████████████████████████████████████████████████████████████ ████████████████████████



*Id*. at 38 (emphasis added).

        19.    Takata did not state in this presentation, nor did it ever disclosed to ACTS prior to this presentation, in the Agreement or otherwise, that it was developing, researching, using, or otherwise inventing capacitive based seat presence detection technology in connection with any alcohol detection system. Rather, in this presentation on March 10, 2011, Takata went on to present the idea that its capacitive based seat presence detection could be ▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮



*Id*. at 39 and 40.

20.     Seven months later, on October 13, 2011, ACTS, Takata, and TruTouch had a project kickoff meeting, during which Takata presented a PowerPoint presentation detailing the objectives of the collaboration, including the planned technical approach, schedule review, and product review.  *See* Ex. J (PowerPoint).  In that presentation, Takata presented a slide of a



*Id*. at 44.

21.    Not only was Takata's capacitive based seat presence detection system not disclosed as Background IP in Schedule C of the Agreement, but, as stated above, the use of a capacitive based seat presence detection system in connection with an alcohol detection system likewise was not disclosed.  *See* Ex. H (Schedule C).

22.    ACTS, Takata and TruTouch terminated the Agreement as of August 31, 2016 and are in the process of negotiating a termination agreement to set forth certain post-closing rights and obligations of the parties (the "Termination Agreement").

23. In connection with the negotiation of the Termination Agreement, ACTS made several requests that Takata transfer ownership of the Patent Assets to ACTS as required under the Agreement. Takata has refused to transfer ownership of the Patent Assets to ACTS.

### B. THE PATENT ASSETS

24. Takata filed at least the following patent applications and/or was issued the following patents, which are the Patent Assets in dispute:

(a) U.S. Provisional Patent Application Serial No. 61/451,082 filed on March 9, 2011;

(b) U.S. Patent Application Serial No. 13/415,767, filed March 8, 2012, which matured into U.S. Patent No. 8,479,864;

(c) U.S. Patent No. 8,479,864;

(d) International (PCT) Patent Application Serial No. PCT/US2012/028295, filed March 8, 2012;

(e) European Patent Application No. 12754647.1, filed March 8, 2012;

(f) Japanese Patent No. JP6121916 (B2); and

(g) Chinese Patent No. CN 103476623B.

25. All of the Patent Assets were filed on or after March 8, 2011, one month after the cut-off date, of February 9, 2011, after which all inventions, improvements, technology, software, hardware, modifications, enhancements, derivatives, translations, compositions, discoveries, data, know-how, processes, methodologies, formulas, designs, drawings, data, information, or works of authorship that are or were developed, discovered, invented, authored or first used or reduced to practice by Takata or TruTouch, in connection with the Agreement, in the course of performing Services or otherwise for or on behalf of ACTS, are owned by ACTS.

26. The '082 Application discloses a finger base alcohol detection and a modified seat integrated driver detection system. *See* Ex. A ('082 Application). Figure 2 of the '082 Application shows "a schematic side view of the occupant of the vehicle seat in FIG. 1 interfacing with an alcohol detection system:"



FIG. 2

27. The specification of the '082 Application discloses several methods to help ensure an intoxicated driver is not able to easily bypass the alcohol detection system by having a passenger or bystander interface with the system, by ensuring that "the finger presented to an alcohol detection system in a vehicle is actually that of the driver of the vehicle (the person sitting in the driver seat)." *See id*.

28. U.S. Patent No. 8,479,864 ("the '864 Patent"), which is related to the '082 Application, claims a system for disabling the operation of a vehicle when a driver of the vehicle is seated in a vehicle seat that comprises an alcohol detection sensor configured to be contacted by the driver with a sensor located proximate to the driver, which is able to sense both the alcohol content of the driver and a representative signal resulting from both the presence of the driver and contact between the driver and the detection sensor, to ensure the driver is touching

11

the sensor. *See*, *e.g.*, Ex. C ('864 Patent), col. 8:29-50. Figure 2 of the '864 Patent shows the same schematic side view of the occupant of the vehicle seat with an alcohol detection system:



Ex. C ('864 Patent) FIG. 2, col. 1:35-37.

29. International (PCT) Patent Application Serial No. PCT/US2012/028295 ("PCT '295"), which claims priority to the '082 Application, discloses an invention related "generally to the field of driver alcohol detection systems." *See* Ex. D (PCT '295). As with the '864 Patent, PCT '295 claims a system for disabling the operation of a vehicle when a driver of the vehicle is seated in a vehicle seat that comprises an alcohol detection sensor configured to be contacted by the driver with a sensor located proximate to the driver, which is able to sense both the alcohol content of the driver and a representative signal resulting from both the presence of the driver and contact between the driver and the detection sensor, to ensure the driver is touching the sensor. *See*, *e.g.*, Ex. D (PCT '295), claim 1. As with the '082 Application and the '864 Patent, PCT '295 discloses the same schematic side view of the occupant of the vehicle seat with an alcohol detection system:

12



(54) Title: SYSTEM AND METHOD FOR DISABLING A VEHICLE

Fig. 2

30. European Patent Application No. 12754647.1 ("EP '647"), which is related to PCT '295, discloses a system for disabling the operation of a vehicle when a driver of the vehicle is seated in a vehicle seat that comprises an alcohol detection sensor configured to be contacted by the driver with a sensor located proximate to the driver, which is able to sense both the alcohol content of the driver and a representative signal resulting from both the presence of the driver and contact between the driver and the detection sensor, to ensure the driver is touching the sensor. *See*, *e.g.*, Ex. E (March 22, 2017 Amended Claims and Description with annotations).

31. Japanese Patent No. JP6121916 and Chinese Patent No. CN 103476623B also related to PCT '295. *See* Exs. F and G.

**FIRST CAUSE OF ACTION**

**(Declaratory Judgment)**

32. ACTS repeats and realleges, and incorporates by reference, each and every allegation contained in paragraphs 1 through 31 as if fully set forth herein.

33. Takata claims the Patent Assets are property of the Debtors' estates under section 541 of the Bankruptcy Code. Takata claims to be the owner of the Patent Assets. However,

13

because none of the Patent Assets nor the inventions disclosed in the Patent Assets were disclosed in Schedule C of the Agreement and because the inventions disclosed in the Patent Assets were developed, discovered, invented, authored, or first used or reduced to practice by Takata, in connection with the Agreement, in the course of performing Services or otherwise for or on behalf of ACTS, the Patent Assets are owned by ACTS.

34. There is thus an actual controversy that is of sufficient immediacy to warrant judicial relief under 28 U.S.C. § 2201. A prompt resolution of the dispute regarding ownership of the Patent Assets is necessary in advance of the Debtors' planned sale of the Patent Assets in this bankruptcy case.

35. ACTS requests a declaratory judgment finding that Takata has no interest in the Patent Assets and that ACTS is the owner of the Patent Assets, including U.S. Provisional Patent Application Serial No. 61/451,082 filed on March 9, 2011; U.S. Patent Application Serial No. 13/415,767, filed March 8, 2012, which matured into U.S. Patent No. 8,479,864; U.S. Patent No. 8,479,864; International (PCT) Patent Application Serial No. PCT/US2012/028295, filed March 8, 2012; European Patent Application No. 12754647.1, filed March 8, 2012; Japanese Patent No. JP6121916 (B2); and Chinese Patent No. CN 103476623B.

## SECOND CAUSE OF ACTION

### (Injunctive Relief)

36. ACTS repeats and realleges, and incorporates by reference, each and every allegation contained in the paragraphs 1 through 31 as if fully set forth herein.

37. Because the Patent Assets are owned by ACTS, ACTS requests an injunction barring Takata from asserting ownership claims under any theory, including inventorship, to the Patent Assets and attempting to sell the Patent Assets in this bankruptcy case.

38. ACTS will continue to suffer serious harm if Takata is permitted to continue its claim to ownership of the Asserted Patents. ACTS rights to the Patent Assets will be impaired in the absence of the requested injunction, thereby harming ACTS.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff ACTS respectfully requests that the Court enter judgment in favor of Plaintiff, as follows:

(1) Declaring that Takata has no ownership or interest in Patent Assets, including U.S. Provisional Patent Application Serial No. 61/451,082 filed on March 9, 2011; U.S. Patent Application Serial No. 13/415,767, filed March 8, 2012, which matured into U.S. Patent No. 8,479,864; U.S. Patent No. 8,479,864; International (PCT) Patent Application Serial No. PCT/US2012/028295, filed March 8, 2012; European Patent Application No. 12754647.1, filed March 8, 2012; Japanese Patent No. JP6121916 (B2); and Chinese Patent No. CN 103476623B;

(2) Enjoining Takata from asserting ownership claims under any theory, including inventorship, to the Asserted Patents, or otherwise attempting to sell the Patent Assets in this bankruptcy case;

(3) Declaring ACTS is the owner of the Patent Assets, including U.S. Provisional Patent Application Serial No. 61/451,082 filed on March 9, 2011; U.S. Patent Application Serial No. 13/415,767, filed March 8, 2012, which matured into U.S. Patent No. 8,479,864; U.S. Patent No. 8,479,864; International (PCT) Patent Application Serial No. PCT/US2012/028295, filed March 8, 2012; European

Patent Application No. 12754647.1, filed March 8, 2012; Japanese Patent No. JP6121916 (B2); and Chinese Patent No. CN 103476623B;

(4)   Awarding ACTS reasonable attorneys' fees; and

(5)   Granting ACTS such other and further relief as the Court deems just and equitable.

| | |
|---|---|
| Dated: February 1, 2018 | */s/ Linda Richenderfer* |
| | **KLEHR HARRISON HARVEY BRANZBURG LLP** |
| Of Counsel: | Linda Richenderfer (DE Bar No. 4138) |
| | 919 N. Market Street, Suite 1000 |
| Richard G. Ziegler | Wilmington, DE 19801 |
| **MAYER BROWN, LLP** | Telephone: (302) 426-1189 |
| 71 S. Wacker Drive | Email: lrichenderfer@klehr.com |
| Chicago, IL 60606 | |
| Telephone: (312) 782-0600 | |
| Email: RZiegler@mayerbrown.com | -and- |
| | |
| -and- | Morton R. Branzburg |
| | **KLEHR HARRISON HARVEY BRANZBURG, LLP** |
| Linda Rhodes | 1835 Market Street - Suite 1400 |
| Ann Marie Duffy | Philadelphia, PA 19103 |
| **MAYER BROWN, LLP** | Telephone: (215) 569-2700 |
| 1999 K Street, NW | Email: mbranzburg@klehr.com |
| Washington, DC 20006 | |
| Telephone: (202) 263-3000 | |
| Email: LRhodes@mayerbrown.com | |
| ADuffy@mayerbrown.com | *Counsel for Automotive Coalition for Traffic Safety, Inc.* |